RICHARD M. CALLAHAN, JR.
225 South Lake Avenue, Suite 300
Pasadena, CA  91101
Telephone:  (626) 202-4060
Telecopier:  (626) 794-4676
State Bar No. 100446
Email:  *rmcallahanjr@earthlink.net*

Attorney for Defendant
YASITH CHHUN

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                   )<br>            Plaintiff,             )<br>                                   )<br>       vs.                         )<br>                                   )<br>YASITH CHHUN,                      )<br>                                   )<br>            Defendant.             )<br>_____) | Case No. CR 05-519(A)-DDP<br><br>**DEFENDANT YASITH CHHUN'S REPLY TO GOVERNMENT'S SENTENCING POSITION**<br><br>Date:  June 25, 2010<br>Time: 2:30 p.m.<br>Place: Courtroom of the Honorable<br>          Dean D. Pregerson |

   Defendant Yasith Chhun, by and through his counsel of record, hereby replies to the government's sentencing position in the above-captioned matter.

Dated: June 15, 2010.                        Respectfully submitted,

                                              THE LAW OFFICES OF
                                              RICHARD M. CALLAHAN, JR.

                                              By: _____
                                                   RICHARD M. CALLAHAN, JR.
                                                   Attorney for Defendant
                                                   YASITH CHHUN

# TABLE OF CONTENTS

**Page**

DEFENDANT YASITH CHHUN'S REPLY TO GOVERNMENT'S
SENTENCING POSITION ………………………………………………… 1

I. INTRODUCTION ………………………………………………… 1

II. ARGUMENT ………………………………………………………… 1

  A. MR. CHHUN WAS AWARE OF THE RISK OF CASUALTIES,
     BUT INTENDED A BLOODLESS COUP ………………………….. 1

  B. THERE IS NOT A SUFFICIENT UNITED STATES INTEREST
     SERIOUS ENOUGH TO WARRANT A LENGTHY PRISON
     SENTENCE ………………………………………………………… 3

  C. THE SENTENCING GUIDELINES PROVIDE AN INITIAL
     CALCULATION, BUT LITTLE MORE, IN EVALUATING THIS
     "ONCE IN A LIFETIME" CASE ……………………………………. 5

  D. THE UNDISPUTED FACTS SHOW THAT THIS PROSECUTION
     WAS POLITICALLY MOTIVATED, AND WARRANTS A
     SUBSTANTIAL VARIANCE ……………………………………….. 6

    1. The Chronology of Events Demonstrates an Irrefutable Link
       Between the Chhun Indictment and the Need to Curry Favor
       With Southeast Asia ……………………………………………… 6

    2. The Fact That Yasith Chhun Was the Only Individual Charged
       By the United States Speaks Volumes ………………………….. 7

  E. MR. CHHUN'S MENTAL STATE SHOULD BE CONSIDERED
     AS A FACTOR BEFORE SENTENCE IS IMPOSED …………………. 8

  F. THE GOVERNMENT'S "SENTENCING DISPARITY"
     ARGUMENT IS FUNDAMENTALLY FLAWED ……………………. 9

| | | |
|---|---|---|
| 1 | **TABLE OF CONTENTS (con't.)** | <u>Page</u> |

1.  Mr. Chhun Has Already Been Sentenced In Cambodia, and It Is Not the Job of the United States to Extract Punishment On Behalf of A Foreign Government ……………………………………………. 9

2.  The Government's Other Examples of Comparable Sentences Are Wholly Distinguishable From the Efforts of Yasith Chhun to Save Cambodia …………………………………………………….. 10

G.  THE AMERICAN PUBLIC IS NOT SERVED BY A LENGTHY PRISON SENTENCE FOR MR. CHHUN …………………………………… 11

CONCLUSION ……………………………………………………………. 13

**DEFENDANT YASITH CHHUN'S REPLY
TO GOVERNMENT'S SENTENCING POSITION**

**I**

**INTRODUCTION**

After defendant Chhun requested that this Court sentence him to a five year period of incarceration for his failed efforts to save his Cambodian homeland, the government has filed a lengthy memorandum seeking a life sentence for Mr. Chhun. It is difficult to imagine a federal case which is perceived so differently by the parties, and which the sentencing recommendations are so diametrically opposed. While Mr. Chhun's struggle to save Cambodia has been compared to the battle against tyranny that founded our own nation 250 years ago, the government attempts to portray Mr. Chhun's failed coup d'état as somehow comparable to the attack on the World Trade Center on 9/11. After consideration of all of the mitigating factors, the recommended five year sentence for Mr. Chhun is both fair and just.

**II**

**ARGUMENT**

**A.   MR. CHHUN WAS AWARE OF THE RISK OF CASUALTIES,
        BUT INTENDED A BLOODLESS COUP**

The government argues that the intent of Operation Volcano was to kill, not to arrest Hun Sen. This is simply not true. As noted in detail in the original sentencing memorandum, remarkable efforts were made to minimize casualties during the coup d'état, and four of the government's own witnesses testified under oath that the plan was to arrest, not kill, Hun Sen.[1]

There is no question that Mr. Chhun understood the risk of possible casualties in his effort, but casualties are the unfortunately byproduct of any war—which "Operation Volcano" was, albeit misguided and on a very small scale. Such a victim

---

[1] *See* Defendant Yasith Chhun's Sentencing Memorandum at pages 18-20.

- 1 -

in this case was Minesum Bo, whom, the government notes, died from an errant bullet during the overthrow effort. His wife, Kimluck Cheap, recounts that tragic night during her emotional interview. Her agony is real, and cannot and must not be minimized. Yet while we have profound empathy, it is crucial for our purposes here to remember the circumstances surrounding his loss. Even the government would have to agree that Minesum Bo's death was neither planned nor desired. Since the dawn of civilization, every attempt by man to achieve freedom from despotism has come at a price, which, like here, often includes unintentional casualties to the innocent. The government sees this case as black and white, and perceives Operation Volcano through the prism of an act of random terrorism rather than as a patriotic revolution against a dictator, since it better fits their sentencing guideline paradigm. When viewed as it should be— a heartfelt, well-intentioned effort to save his country—the government's sentencing arguments simply crumble.[2]

The government's harsh sentencing position here is a bit surprising in light of our country's own history of attempts at "regime change." It is important to remember that the United States government has orchestrated or encouraged the overthrow of a number of foreign governments with which it has had political differences. Although it is not possible to know precisely how many coup d'états were perpetrated by our

---

[2] In its papers, the government places a great deal of focus on what became known as "popcorn attacks," small scale incidents that preceded the overthrow effort. While issues relating to popcorn attacks have been repeatedly briefed in this litigation and need not be belabored here, it bears repeating that the evidence presented at trial demonstrated only that Mr. Chhun was aware that certain small scale events would take place to awaken the Cambodian people, and ratified several of them after they occurred. There remains no evidence that Mr. Chhun planned any fatal attacks, or intended to kill any of the victims of the popcorn attacks. The only popcorn with evidence supporting Mr. Chhun's knowledge of the attack in advance was the April 1999 attack on an empty fuel depot, which was intended to damage only the structure. There was insufficient evidence presented at trial that Mr. Chhun specifically ordered *any* of the popcorns that resulted in casualties. There was no eyewitness testimony relating to any of these incidents, and no forensic evidence was introduced. At best, the government proved that Mr. Chhun approved of the popcorns after the fact, either by written word or by providing a stipend to the participants.

government, those overthrow efforts generally considered to have been either orchestrated or supported by the United States is telling. Some examples:

1) Cuba (1898)
2) Guatemala (1954)
3) Cuba ("Bay of Pigs") (1961)
4) Iran (1953)
5) Guatemala (1963)
6) South Vietnam (1963)
7) Brazil (1964)
8) Cambodia (1970)
9) Chile (1973)
10) Grenada (1983)
11) Panama (1989)
12) Afghanistan (2001)
13) Iraq (2003).[3]

With such a track record of attempting regime change by our own government, with motives not nearly as noble as Mr. Chhun's, the government's extreme sentencing position in this case is simply not warranted.

## B. THERE IS NOT A SUFFICIENT UNITED STATES INTEREST TO WARRANT A LENGTHY PRISON SENTENCE

One of the overriding themes of the defense in this case has been that the United States had only a modest interest to protect by the indictment of Mr. Chhun, specifically, the ability of the United States to conduct its own foreign affairs.[4] While weapons were used in the overthrow effort, and life was lost, these are interests that should be governed by jurisprudence in Cambodia, and not the United States.

---

[3] Most of this list are detailed in the book by Stephen Kinzer, *Overthrow: America's Century of Regime Change from Hawaii to Iraq* (Henry Holt and Company 2007);
[4] *See* The Neutrality Act, 18 U.S.C. § 960.

In determining the scope of federal laws, the Supreme Court has relied on the "commonsense notion that Congress generally legislates with domestic concerns in mind." *Small v. United States*, 544 U.S. 385, 388 (2005), quoting *Smith v. United States*, 507 U.S. 197, 205 n.5 (1993). The government argues that the scope of § 956(a), along with its strict sentencing guideline provisions, is broad enough to encompass a variety of factual situations. Yet a review of the facts of each case cited by the government involves, unlike here, a conspiracy to commit murder in a foreign country in which serious interests of the United States—including the protection of its citizens—was directly implicated by the murder. *See United States v. Fernandez*, 559 F.3d 303 (5th Cir. 2009) (plot to murder possible cooperating witness against international drug cartel which could impact ability of United States to prosecute traffickers); *United States v. Wharton*, 320 F.3d 526 (5th Cir. 2003) (conspiracy to murder United States national abroad to collect insurance proceeds directly impacted federal fraud statutes); *United States v. David Coleman Headley, et al.*, R 09-830 (N.D. Ill., filed January 14, 2010) (six American citizens murdered in Indian terrorist attack).[5] Unlike these cases, the deaths that occurred during the attempted coup d'état in Cambodia did not directly impact United States' interests. The attenuated connection between the United States and the Cambodian overthrow does not warrant the draconian sentence requested by the government. Mr. Chhun should be sentenced based upon how his actions impacted the United States, i.e., violation of the Neutrality Act, and not how these actions impacted the oppressive government of Cambodia.

/

/

/

/

---

[5] The government also cites to *United States v. Harrison Jack, et al.*, CR 07-266-FCD (E.D. Ca.) which involves allegations regarding an attempted overthrow of the Laotian government. While factually more similar to the current case than the others, this case remains in pretrial litigation and provides little value to the government's arguments here.

- 4 -

## C. THE SENTENCING GUIDELINES PROVIDE AN INITIAL CALCULATION, BUT LITTLE MORE, IN EVALUATING THIS "ONCE-IN-A-LIFETIME" CASE

As noted in the opening papers, the Sentencing Guidelines when applied to this case go so far afield that they take focus away from the real issues in this case. The most serious of the statutes charged in this case were intended to be terrorism statutes to protect the United States.[6] These statutes serve an important security purpose in the appropriate setting, but were not intended to apply to a case like that of Mr. Chhun. The government points out that the defense does not challenge the guideline calculations, and we do not; as noted, the black-and-white nature of the guidelines provides no latitude for a case-by-case analysis. Under strictly a guideline analysis, a conviction under § 956 with 1) injuries and 2) an enhancement for being a "leader or organizer" *automatically* results in an offense level of 48 with a criminal history of VI.[7] With such draconian numbers, it is not surprising that the government focuses so heavily on the guideline calculations in its brief. The calculations propounded by the government are absolutely correct, yet utterly meaningless. Using a strictly mathematical approach to sentencing calculations only highlights the Guidelines' inherent flaw: The Guidelines do not distinguish an attempted coup d'état of Canada from an effort to remove a dictator from power 8,000 miles away who had caused the deaths of hundreds of thousands of innocent people. The Guidelines provide no proportionality. While it is apparent from the government's papers that it would love to return to "pre-*Booker*" days and make the sentencing guidelines mandatory again, these guideline figures fortunately provide only an initial sentencing calculation. The

---

[6] This issue was dealt with at length in Mr. Chhun's Motion to Dismiss Count One of the Indictment, and is incorporated herein by reference.

[7] In addition to an *automatic* 12-level enhancement for a § 956(a) conviction, guideline section 3A1.4(b) compounds this ludicrous result by imposing an *automatic* criminal history category of VI for a conviction under that statute.

- 5 -

guidelines are only one of the 3553(a) factors for this Court to consider, and are no more important than any other factor.

D. **THE UNDISPUTED FACTS SHOW THAT THIS PROSECUTION WAS POLITICALLY MOTIVATED, AND WARRANTS A SUBSTANTIAL VARIANCE**

  1. <u>**The Chronology of Events Demonstrates An Irrefutable Link Between the Chhun Indictment and the Need to Curry Favor With Southeast Asia**</u>

The government argues that Mr. Chhun has failed to prove a connection between U.S.-Cambodian relations after 9/11 and his indictment to show that this prosecution was politically motivated. The government chastises the defense for relying on news articles "as gospel" to make this correlation.[8] Yet the government does not dispute a *single word* from the cited articles, and conveniently ignores the fact that the government itself has also relied on news articles to support certain of its arguments in this case—not only in its sentencing position, but even as exhibits during trial.

The government claims that the search of Mr. Chhun's business on September 11, 2001, undermines his argument that the indictment in this case would not have occurred absent 9/11. This argument misses the point. Mr. Chhun does not dispute that the government was investigating CFF in 2001, but rather that the investigation ceased to exist in May of 2003, and remained absolutely dormant until the frantic scramble two years later when the statute of limitations was about to run on several charges.

The government claims that Mr. Chhun's argument that this case is politically motivated is "virtually impossible to prove or disprove."[9] While it is agreed that the government would never admit that Mr. Chhun's prosecution was motivated by

---

[8] *See* Government's Amended Response to Presentence Report and Sentencing Position at 29.
[9] *Id.*

political interests, the detailed chronology set forth in Mr. Chhun's opening memorandum, albeit circumstantial, is compelling: 1) the demands by Hun Sen for the arrest of Mr. Chhun if the United States expected cooperation in the counterterrorism effort; 2) the need for improved relations between the two nations after 9/11; 3) the message from the United States ambassador to Cambodia, Charles Ray, describing Mr. Chhun's arrest as a "very important achievement for U.S. relations in Southeast Asia, *and is key to building regional cooperation in counterterrorism*" (emphasis added), as well as 4) the new FBI office in Phnom Penh, all point to the undeniable conclusion that Mr. Chhun's prosecution was a direct result of political maneuvering.

### 2. The Fact That Yasith Chhun Was the Only Individual Charged By the United States Government Speaks Volumes

The government claims that, contrary to Mr. Chhun's contention that he was singled out for prosecution, other individuals were charged and convicted for the attempt to overthrow Hun Sen. However, this response begs the question. Clearly, other CFF members were charged and convicted for the attempted Cambodian coup d'état, yet those men were tried and convicted *in Cambodia* for crimes committed against that country, not for crimes against the United States. As set forth in the opening papers, a number of individuals currently living in the United States who were intimately involved in the attempted overthrow were not charged in this country. While the government goes to great lengths to attempt to minimize the involvement of these uncharged CFF members, their own words place them in the heart of this overthrow effort. For example, Sokhieng Set admits to holding a leadership position for CFF in Seattle, and going to Cambodia to help train the soldiers with walkie-talkies in anticipation of "Operation Volcano." He also admits to speaking with other CFF fighters in both Cambodia and Thailand. Sokohm So was Secretary General of CFF, and while he did not believe his own donations were being used to purchase weapons, he was aware that weapons had already been obtained from army personnel in Cambodia. He fully supported the coup d'état, and believed that money raised by CFF

was for radios, computer equipment, and camping equipment for the CFF fighters in preparation for the coup. Heng Tek stopped being actively involved with CFF shortly before the coup, not because he disagreed with the effort, but because he felt there were not enough troops to achieve victory over Hun Sen. Silen Lem wrote a battle plan for the overthrow effort that the government relied on extensively at trial to show the scope of the overthrow plan.

Finally, and most telling, it should be remembered that government witness Thong Samien was sentenced in Cambodia *in absentia* to life imprisonment for his participation in the attempted overthrow, but was not charged in the United States with so much as a misdemeanor. While Mr. Chhun was admittedly the leader of CFF, these men were some of his top allies in planning the removal of Hun Sen from power. While each of them walks the streets in this country as free men, Yasith Chhun has just completed his fifth year of confinement in this case.

### E. MR. CHHUN'S MENTAL STATE SHOULD BE CONSIDERED AS A FACTOR BEFORE SENTENCE IS IMPOSED

The government challenges the conclusions of defense psychiatrist William Sack that Mr. Chhun suffered from "Post Traumatic Stress Disorder" during the time of the planning and attempted execution of "Operation Volcano." As evidenced by his CV attached as an exhibit to defendant's original Sentencing Memorandum, Dr. Sack has been a doctor for fifty years, and has spent much of his adult life researching and writing about the how a child living through the Khmer Rouge has suffered in later life. The government's expert, Marc Cohen, has been a doctor for eight years, and his CV reveals no background in evaluating childhood trauma, let alone experience dealing with the unique problems associated with Khmer Rouge refugees. Regardless, there is no need for the parties to engage in a "battle of the experts." The importance of Dr. Sack's evaluation was not his conclusion that Mr. Chhun suffers from PTSD, but rather in proving to the Court the clear connection between Mr. Chhun's youth in Cambodia and his undaunted determination to free the people of Cambodia. While Dr.

Sack's medical conclusion is more than justified, there is no need for a specific finding of PTSD or any other medical syndrome in order to make that point.

## F. THE GOVERNMENT'S "SENTENCING DISPARITY" ARGUMENT IS FUNDAMENTALLY FLAWED

### 1. Mr. Chhun Has Already Been Sentenced In Cambodia, and It Is Not the Job of the United States To Extract Punishment On Behalf of a Foreign Government

The government next argues that since CFF commanders Richard Kiri Kim and An Mow received life sentences in Cambodia after the attempted coup d'état, a life sentence for Mr. Chhun would avoid "sentencing disparity." This argument is flawed on several levels. First, the convictions of Mr. Kim and Mr. Mow in Cambodia cannot be compared to prosecutions in the United States, since they dealt with different charges in a country with different prosecutorial interests. Further, the trials of CFF members in Cambodia have been condemned by a number of human rights organizations as being corrupt and fundamentally unfair.[10] Finally, and most critical here, is that Mr. Chhun has already been sentenced *in absentia* to life imprisonment in

---

[10] *Human Rights Watch* reported the following in their 2002 World Report:
> Cambodia's judicial system remained weak and far from independent, with numerous court decisions influenced by corruption or apparent political influence. The high-profile trials in June and October of sixty alleged members of the Cambodian Freedom Fighters (CFF) fell short of international standards for fairness. Most of the defendants were arrested without warrants and had little or no access to their lawyers while in pre-trial detention, which exceeded the legal limit of six months. After the first day of the trial of the first thirty-two defendants in June, most of the lawyers for the accused boycotted the proceedings, citing breaches of proper procedures. Five lawyers subsequently received anonymous threats of violence against them if they did not return to the courtroom. The judge appointed two new lawyers to act for all of the accused, and refused to delay the hearing, leaving these lawyers with no opportunity to meet their clients or prepare an adequate defense. On June 22, all but two of the first group of accused were convicted of terrorism and membership in an illegal armed group, and given sentences ranging from three years to life in prison. Another twenty-six defendants were convicted in the October trial.

*Human Rights Watch, World Report 2002—Cambodia*

Cambodia, so it is illogical to attempt to use his Cambodian trial in an effort to show "disparity."

In Mr. Chhun's opening sentencing papers, it was pointed out that Cambodian Prime Minister Hun Sen was adamant about Mr. Chhun being punished by the United States for his actions. The sentencing position of the government requests the same sentence that Mr. Chhun received in Cambodia for the failed coup d'état. While it is true that Mr. Chhun has not been incarcerated on the Cambodian charges, that fact is beside the point. Simply stated, it is not the role of the United States government to do Cambodia's bidding. We are not the world's "policeman"—particularly when it involves doing a political favor for the government of a country that has long been held in such contempt by the United States that it is one of a select group of nations in the world with which we have no extradition treaty.[11]

## 2. **The Government's Other Examples of Comparable Sentences Are Wholly Distinguishable from the Efforts of Yasith Chhun To Save Cambodia**

The government goes further, and cites to cases where the defendant received at least a life sentence for terrorist acts. The government asks this Court to find Mr. Chhun's efforts to save his homeland from oppression somehow comparable to heinous, senseless attacks upon the United States, including the 1993 World Trade Center Bombing,[12] the 9/11 attack on the World Trade Center,[13] the Oklahoma City federal building bombing,[14] and the attempt to blow up a United States aircraft with a shoe bomb.[15] Again, each of these horrific acts of senseless terrorism involved attacks against the United States and its citizens. When the extremely unique and

---

[11] Notwithstanding the recent dramatic change in U.S./Cambodian relations for political expediency, there remains no extradition treaty with Cambodia.
[12] *United States v. Yousef*, 327 F.3d 56 (2d. Cir. 2003).
[13] *United States v. Moussaoui*, 591 F.3d 263 (4th Cir. 2010).
[14] *United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998) and *United States v. Nichols*, 169 F.3d 1255 (10th Cir. 1999).
[15] *United States v. Reid*, 206 F.Supp.2d 132 (D. Mass. 2002).

- 10 -

distinguishable circumstances of the *Chhun* case are considered, these cited terrorism cases provide absolutely no basis for comparison.

### G. THE AMERICAN PUBLIC IS NOT SERVED BY A LENGTHY PRISON SENTENCE FOR MR. CHHUN

The government relies extensively on the recent Ninth Circuit case of *United States v. Ressam*, 593 F.3d 1095 (9th Cir. 2010), in an attempt to support its argument for a life sentence for Mr. Chhun. What is most disturbing by the government's reliance on this case is that it further illustrates the wide chasm that separates how the parties view this case. There is no disputing that Mr. Chhun was attempting to save his homeland from a murderous tyrant, however misguided and inept his efforts may have been. On the other hand, the *Ressam* case involved an attempt by an Islamic terrorist to blow up LAX. These two cases are antithetical to each other. How Ressam's senseless terrorist plot can possibly be compared to Mr. Chhun's compassionate effort to remove Hun Sen is baffling.[16] Here are just a few distinguishing characteristics from these two utterly diverse cases:

1) Ressam was a lifetime criminal; Mr. Chhun has a prior driving violation.
2) Ressam was an avowed terrorist intent on destroying the United States; Mr. Chhun was an accountant.
3) Ressam planned to destroy a commercial airport on United States soil with a large bomb that would have caused the fatalities of many innocent American citizens; Yasith Chhun planned to seize a palace 8,000 miles away in Cambodia with as few Cambodian casualties as possible in order to remove a murderous dictator.

---

[16] Remarkably, the government states that it believes Mr. Chhun's conduct to be "far more egregious" than that of Ressam. [Government's Amended Response to Presentence Report and Sentencing Position at 40].

        4) Ressam's targets were innocent travelers; Mr. Chhun's focus was on removing a man from power that the House of Representatives believed was an international war criminal.

While the government points out that Ressam's 22-year sentence was reversed as unreasonably low even though he cooperated with the prosecution after his trial, the government conveniently glosses over the fact that Ressam effectively sabotaged his assistance by abruptly ceasing cooperation, and then recanting his prior statements which caused the dismissal of two pending prosecutions, thus prompting the government appeal in the first place.

     Yet the *Ressam* prosecutors themselves highlighted the critical fact that separates Ressam from Yasith Chhun. In arguing for a lengthy sentence, the prosecution in *Ressam* noted that the sentence "must also send an unequivocal message to extremists that there is a horrendous price to pay for *targeting the United States*." *Ressam* at 1111 (emphasis added). The *Ressam* court adopted that theme, holding that the sentence imposed "must also act as a deterrent to future potential terrorists who are contemplating actions *against the United States*." Id. at 1110-11 (emphasis added). Far from targeting the United States, Yasith Chhun loved this country, and hoped to rebuild Cambodia based upon the same governmental structure as the United States. It is difficult to fathom two cases, indicted under the same statute, that bear such little relation to each another.[17]

     The government's attempt to make Mr. Chhun's overthrow effort comparable to these heinous terrorist attacks upon the United States is belied by the undisputed fact that Mr. Chhun openly admitted his involvement with the overthrow attempt to the FBI—and numerous national publications—shortly after it occurred, yet was allowed

---

[17] Curiously, the government again cites as additional "support" several cases that have only recently been indicted, and have yet to be litigated. *See United States v. Jack, et al.*, CR 07-266-FCD (E.D.Cal., filed June 14, 2007), *United States v. David Coleman Headley*, No 09-CR-830 (N.D. Ill., filed January 14, 2010), and *United States v. Colleen R. LaRose*, No. 10-CR-123 (E.D. Pa., filed March 4, 2010). As stated previously, the mere filing of an indictment hardly creates a precedent.

to continue to live, work, and advocate his beliefs freely for almost five years before his arrest. It is incomprehensible that the government would allow Mr. Chhun to live his life as usual if he was truly considered another Ressam, Moussaoui, or Timothy McVeigh. In its papers, the government quotes the maxim, "[A]ctions speak louder than words."[18] Yet the converse is also true, and most germane here: *In*action also speaks louder than words. The federal government is asking this Court to consider Mr. Chhun a more serious threat than the government itself did. The government's belated indignation at Mr. Chhun's overthrow effort simply rings false.

## CONCLUSION

It defies fairness and common sense that our government would take such a black-and-white, hard-line position against Yasith Chhun as it attempts to portray him as nothing more than a common terrorist deserving of maximum punishment. This is a man who came to the United States to find freedom, embraced our principles, and desired nothing more than to bring democracy to his homeland in Cambodia. Sadly, it appears our government has chosen to turn its back on a loyal friend to curry political favor abroad, and now treats Mr. Chhun like an enemy.

For the reasons stated, it is respectfully requested that Mr. Chhun be sentenced to a five-year period of incarceration.

Dated:  June 15, 2010.                    Respectfully submitted,

                                          THE LAW OFFICES OF
                                          RICHARD M. CALLAHAN, JR.

                                          By: _____
                                          RICHARD M. CALLAHAN, JR.
                                          Attorney for Defendant
                                          YASITH CHHUN

---

[18] *See* Government's Amended Response to Presentence Report and Sentencing Position at 9.

- 13 -